NOT FOR PUBLICATION WITHOUT THE
 APPROVAL OF THE APPELLATE DIVISION
 This opinion shall not "constitute precedent or be binding upon any court."
 Although it is posted on the internet, this opinion is binding only on the
 parties in the case and its use in other cases is limited. R.1:36-3.

 SUPERIOR COURT OF NEW JERSEY
 APPELLATE DIVISION
 DOCKET NO. A-4817-15T2

BOROUGH OF AVALON,

 Plaintiff-Appellant,

v.

THE MARINA AT AVALON ANCHORAGE, LLC,

 Defendant-Respondent,

and

SUNRISE MARINA, INC. and AVALON
ANCHORAGE MARINA, LLC,

 Defendants.
____________________________________

 Argued April 26, 2017 – Decided June 5, 2017

 Before Judges Accurso and Manahan.

 On appeal from Superior Court of New Jersey,
 Chancery Division, Cape May County, Docket
 No. C-8-16.

 Daniel A. Greenhouse argued the cause for
 appellant (Cullen and Dykman, LLP,
 attorneys; Neil Yoskin and Mr. Greenhouse,
 on the brief).

 Richard M. Hluchan argued the cause for
 respondent (Hyland Levin, LLP, attorneys;
 Mr. Hluchan, on the brief).
PER CURIAM

 Plaintiff Borough of Avalon appeals from a June 20, 2016

final judgment granting defendant The Marina at Avalon

Anchorage, LLC's (Anchorage) motion to dismiss the Borough's

declaratory judgment complaint to invalidate the vacation of a

portion of 20th Street, which the Borough did in 2010 at the

behest of Anchorage's predecessor in title or, in the

alternative, to compel Anchorage to construct the "public

benefit improvements" its predecessor agreed to build in return

for the vacation. Because none of the recorded documents in

Anchorage's chain of title put it on notice that the street

vacation was contingent on the construction of those

improvements, we affirm.

 We summarize the essential facts from the view most

favorable to the Borough. In 2005, Anchorage's predecessor,

Avalon Anchorage Marina, LLC (Marina), approached the Borough

about rezoning the property to permit residential development

and vacating the contiguous portion of 20th Street to assist in

its plans to redevelop the marina. Although amenable to the

idea of redevelopment, the Borough wanted Marina to maintain a

fuel dock and a restaurant on the property, to create more boat

slips, perhaps reinstate boat rentals, and limit residential

units to one particular section of the property.

 2 A-4817-15T2
 In 2007, Marina presented a site plan to the Borough's

combined Planning and Zoning Board of Adjustment and formally

requested the Borough to vacate a portion of 20th Street.

Marina's lawyer submitted a certification in this action,

averring that his client, Anchorage's predecessor, "proposed

retention of a fuel dock, a public boat ramp and a public access

area in consideration for the rezoning and the vacation of a

portion of 20th Street." The Borough Council determined that

vacating a portion of 20th Street would serve the public

interest because of the public benefits included in Marina's

plan, and agreed to do so in exchange for Marina's promise to

construct those improvements. The lawyer certified that "[t]o

the best of [his] knowledge," his client "fully intended to

construct those improvements when it developed the [p]roperty."

 Marina, however, did not develop the property. Instead,

"[f]or reasons unrelated to the approval obtained from the

Avalon Planning/Zoning Board and the [Department of

Environmental Protection], as well as the street vacation

approved by the Borough, [Marina] decided to sell the [p]roperty

prior to commencing construction." And nothing in either the

ordinance vacating the portion of 20th Street or the site plan

approval expressly conditioned the street vacation on the

construction of those public benefits.

 3 A-4817-15T2
 The only condition contained in the Ordinance vacating the

street was that Marina obtain, within two years1, all approvals

from the DEP and the Planning/Zoning Board necessary to permit

construction. Specifically, the ordinance provides:

 SECTION 3: CONTINGENCY: This vacation is
 contingent upon Avalon Anchorage Marina
 obtaining all approvals from the State of
 New Jersey Department of Environmental
 Protection as may be required by the Coastal
 Area Facilities Review Act [(CAFRA)] and
 from the Avalon Planning/Zoning Board for
 the construction of improvements at its
 property located at 863 21st Street within a
 period of two (2) years from the date of
 adoption of this Ordinance. In the event
 Avalon Anchorage Marina fails to obtain the
 necessary approvals within two (2) years
 from the date of this Ordinance[,] the
 vacation shall be void and the Borough shall
 retain its existing right of way. Evidence
 of compliance with this condition shall be a
 resolution from Borough Council
 acknowledging same upon presentation of
 proof of the required municipal land use
 approvals and a CAFRA permit from the
 appropriate authorities.

 [Borough of Avalon, Ordinance No. 585-2007.]

 The resolution of site plan approval likewise does not

condition approval on construction of the improvements designed

for the public benefit. The only reference to those

1
 The Borough extended that period for an additional year with
the adoption of Ordinance No. 617-2009 on May 27, 2009.

 4 A-4817-15T2
improvements is contained in that portion of the resolution

summarizing the testimony at the public hearing as follows:

 1. Applicant's engineer, A. Christopher
 Eaton, P.E. . . . stated that . . . the fuel
 docks would remain and that a boat ramp will
 replace the existing boat lift. . . .

 2. Applicant's architect, Jerry Blackman,
 A.I.A. testified that . . . the proposed
 boat ramp would be maintained and available
 for public use. . . . He stated that the
 walkways along the water were dedicated to
 public use . . . .

 3. Peter Lomax, the project's environmental
 consultant . . . indicated that based upon
 previous meetings with the Department of
 Environmental Protection, the State appeared
 in favor of the project, citing the public
 boardwalk and retention of boat slips as
 favorable.

 5. One of Applicant's principals, Charles
 Johnson, testified . . . that the fuel
 storage would be upgraded in response to the
 need and demands of the boating public and a
 public restroom was proposed.

 [Emphasis added.]

 Following the DEP's issuance of the CAFRA permit to Marina

in March 2010, the Borough Council "[i]n reliance upon the Site

Plan approval and the CAFRA [p]ermit received by [Marina], both

of which included the Public Benefits, . . . adopted Resolution

No. 98-2010 dated June 9, 2010, confirming that [Marina] had

complied with the conditions of the Ordinances vacating a

portion of 20th Street." See Resolution No. 98-2010, "A

 5 A-4817-15T2
Resolution Acknowledging and Confirming Compliance by Avalon

Anchorage Marina, LLC with the Conditions Set Forth in Ordinance

No. 585-2007, Adopted June 13, 2007." The Resolution sets forth

the contingency contained in Ordinance No. 585-2007, recites the

history of the matter, references and attaches as exhibits the

"documentary proof . . . to substantiate compliance" with the

contingency and resolves that "Avalon Anchorage Marina, LLC has

complied with all of the conditions set forth in Ordinance No.

585-2007, . . . as amended by Ordinance No. 617-2009 . . .

concerning the vacation of portions of 20th Street in the

Borough of Avalon," and thus that "the public right, title and

interest in, along, upon and over the land . . . be and hereby

is vacated, surrendered and extinguished," and directs its

recording. Resolution No. 98-2010 was recorded in the Cape May

County Clerk's Office on June 14, 2010, in Book S7 at pages 423

through 489.

 Marina sold the property to Anchorage in February 2012. In

February 2016, Anchorage submitted a revised site plan to the

Planning/Zoning Board without the fuel dock or boat ramp.

Shortly thereafter, the Borough filed this action to invalidate

the street vacation or compel Anchorage to enter into an

agreement with the Borough "imposing permanent conditions on the

Anchorage Property" requiring "that any future use . . . include

 6 A-4817-15T2
the Public Benefits" which agreement "shall be recorded in the

Cape May County Clerk's Office and which conditions shall run

with the land."

 Judge Sandson entered an order to show cause, directing

service of the complaint and setting a briefing schedule and

return date. Upon receipt of the pleadings, Anchorage filed an

answer and a motion to dismiss. After hearing argument, the

judge directed additional briefing and set a short period for

discovery in order to permit the Borough to ascertain whether

Anchorage's principal had actual knowledge of Marina's agreement

to construct the public benefit improvements in exchange for the

vacation of a portion of 20th Street.

 After conducting that discovery, the Borough conceded it

was without any information to indicate actual knowledge of the

agreement on the part of Anchorage. The Borough argued,

however, that Anchorage failed to make reasonable inquiry into

the consideration given for vacating the street; that the

expiration of the CAFRA permit without construction of the

public benefit improvements, resulted in a breach of the

agreement, including the implied covenant of good faith and fair

dealing; that none of the sworn representations of

representatives of Marina, noted in the recorded documents, had

been carried out; and that the failure to construct the public

 7 A-4817-15T2
benefits before expiration of the CAFRA permit resulted in both

a failure of consideration and of the underlying purpose of the

street vacation. The Borough maintained the absence of any

public benefit rendered the street vacation ultra vires and thus

null and void.

 Anchorage argued, among other things, that although the

Planning/Zoning Board approved a plan which contained a fuel

dock and a boat ramp, nothing in the approval or the ordinances

required those elements to be included in the redevelopment;

that it was entitled to rely on the recorded resolution that

Marina had "complied with all of the conditions . . . concerning

the vacation of portions of 20th Street"; and that its right to

the vacation had vested, precluding the Borough from divesting

it of its property right.

 Judge Sandson, relying on Island Venture Associates v. New

Jersey Department of Environmental Protection, 179 N.J. 485

(2004), determined that Anchorage was not on notice of any

unsatisfied condition of the street vacation and thus could not

be bound to construct the improvements.

 The Court finds this matter is subject
 to the ordinance and resolution which
 provide that the street is to be vacated
 upon Anchorage's obtaining . . . all
 approvals from the State of New Jersey
 Department of Environmental Protection as
 may be required by the . . . Coastal Area

 8 A-4817-15T2
Facilities Review [A]ct and from the Avalon
Planning and Zoning Board. . . . Anchorage
has in fact met these conditions.

 The ordinance does not specifically
provide for any condition premised on public
benefits. The portion of 20th Street South
was vacated to [Marina]. Later Anchorage
purchased it after completing a search, a
proper search, certainly nothing that . . .
has been presented to me shows that it was
not a proper search of the Cape May County
records. In their search such public
interest elements were not and could not be
recorded as condition of which if not met
the Borough could at any time rescind the
vacation of 20th Street[.]

 How could that have been done? How
could the . . . Borough of Avalon . . .
reflect that if this was . . . truly their
position? They could have established a
reverter that would have been right in the
street vacation. Such a reverter never
existed. . . . [T]his court has seen many
cases in which a municipality retains a
reversionary interest. In the event certain
things, specifically conditioned things are
not entered it would be in the deed of
vacation, it would be clearly reviewable and
searchable by a buyer.

 This did not happen here. I think that
the interests of the sanctity of the
Recording Statute here overcomes a long and
protracted argument made by [plaintiff's
counsel]. And I understand his argument. .
. . I don't think that [counsel's]
argument, if I follow it to its fair and
full conclusion, would have provided a buyer
of real estate with any . . . reasonable
notice whatsoever of what Avalon's
conditions were. The fact that it was
contained . . . in one of the chain of
municipal approvals leading to the vacation

 9 A-4817-15T2
I don't think is adequate. I don't think
that it provides fair notice. I think that
it would subvert . . . the high public
interest that . . . this State has in the
sanctity of its recording statutes[.]

 [I]f I were to now say to [defendant]
. . . that you'd better read everything
because you'd better satisfy the public
interest. I don't think that's what's
called for in our law in this area.
Additionally, as I said, there's no reverter
clause in the agreement between [Marina] and
the Borough indicating that the vacated
portion of land would revert back to the
Borough should the public interest elements
not be met.

 What is important to note is that there
was a contingency in . . . [O]rdinance [Nos.
585-2007 and 617-2009], that does state if
the approvals were not timely obtained. In
fact, those were observed . . . by [Marina]
and in fact they did get that, the one CAFRA
extension and then they got the CAFRA
permit. Thus I think it's clear that the
Borough knew to include a contingency when
it so desired. However no contingency was
included regarding . . . the possibility of
rescinding the vacated portion of 20th
Street should the public interest elements
not be met.

 The fact is that the alleged conditions
which the Borough seeks to rescind were not
recorded and as such when Anchorage
purchased the property after it conducted a
search it was not noticed of such alleged
conditions. Therefore the property was
purchased with notice of what was recorded
and no conditions allowing the Borough of
Avalon to rescind its vacation of 20th
Street were included. And I don't think
that a reasonable buyer in such a case
should be deprived of his ownership of real

 10 A-4817-15T2
 property based upon his own analysis of
 whether or not the public interest was met.

 Judge Sandson thus entered a final order providing that

Anchorage's right in the vacation

 is fully vested, and is not subject to any
 contingencies, conditions subsequent, or
 reverters, and as such Anchorage, and its
 heirs, successors and assigns, is under no
 obligation to provide any public benefits,
 including but not limited to a boat ramp,
 public walkway, or gasoline dock facilities
 at the marina located at 863 21st Street in
 Avalon.

 This appeal followed.

 We agree that Island Venture controls here. Accordingly,

we affirm, substantially for the reasons expressed by Judge

Sandson in his opinion from the bench. We add only the

following.

 We accept the Borough's contention that a municipality may

vacate a portion of a public street in favor of an abutting

landowner only in the public interest. See generally N.J.

Const. art. VIII, § 3, ¶ 3 (prohibiting donation of land by any

municipal corporation); Palisades Props., Inc. v. Brunetti, 44

N.J. 117, 137-38 (1965) ("It is clearly established that a

municipality may vacate a street where such action serves the

general public interest.").

 11 A-4817-15T2
 Further, the Borough would have acted well within its

powers to have conditioned the vacation on the landowner's

agreement to construct and maintain in perpetuity the public

benefits contemplated by the grant, that is the boardwalk, boat

ramp and fuel dock. See Palisades, supra, 44 N.J. at 139

(noting "a municipality has the power, and under certain

circumstances the duty, to append a condition to a street

vacation to assure that the land thus relieved of the public

easement will be employed for the purposes upon which the

municipality based its conclusions that it was for the general

public interest"). The problem here is the municipality failed

to do so, instead, conditioning the vacation only on the

landowner obtaining its CAFRA permit and site plan approvals,

neither of which compelled construction of the public benefits.

There is no support for the Borough's argument that the failure

to have effectively secured the public benefit intended, renders

the vacation void ab initio.

 Notwithstanding its failure to have drafted an effective

condition to secure the benefits on which the vacation was

based, the Borough may well have been able to compel the

landowner requesting the street vacation to build and maintain

the improvements. See id. at 130. It is, however, another

matter altogether to enforce such an unexpressed restriction

 12 A-4817-15T2
against a subsequent purchaser without knowledge of the

condition. See Island Venture, supra, 179 N.J. at 494 (noting a

good faith, innocent purchaser is "precisely the type of

purchaser whom the Legislature sought to protect when enacting

the Recording Act").

 The recorded resolution states in plain and unmistakable

terms that Marina had "complied with all of the conditions" set

forth in the Ordinances conditionally granting the street

vacation and thus "the public right, title and interest in,

along, upon and over the land" was thereby "vacated, surrendered

and extinguished." Having reviewed each of the attachments

recorded with that document, we agree with the trial court that

none would put a purchaser on notice that the street vacation

was contingent on any public benefit improvements.

 We need not reach Anchorage's contention that because the

street vacation had vested, the Borough was without authority to

divest it of its right in the property, relying on Stockhold v.

Jackson Township, 136 N.J.L. 264 (E. & A. 1947). We do not

agree that Stockhold stands generally for the proposition, as

Anchorage asserts, that "[u]nder the law in New Jersey, once the

right to a street vacation has vested, neither the municipality

nor the Court can impair or void such a right." As we have

already observed, we think it likely the Borough could have

 13 A-4817-15T2
compelled Anchorage's predecessor in title to construct the

public benefit improvements or relinquish the property vacated

under the facts presented. That case, however, is not the one

presented. It is enough to find, as the trial court did, that

because Anchorage was a good faith, innocent purchaser without

knowledge of the agreement between its predecessor and the

Borough, it took title free of the unexpressed condition of

which it had no notice.

 We are not unmindful that this result deprives the public

of the significant benefits of a public access walkway along the

water, a fuel dock and a boat ramp anticipated when the Borough

agreed to vacate a portion of 20th Street. We note only that

the power to have effectively conditioned the street vacation on

those benefits was in the Borough, and that the Recording Act

shields the subsequent purchaser from having to construct the

improvements having never been noticed of any such obligation.

See Island Venture, supra, 179 N.J. at 495.

 We affirm the dismissal of the Borough's complaint,

substantially for the reasons expressed in Judge Sandson's

thorough and thoughtful oral opinion of June 7, 2016.

 Affirmed.

 14 A-4817-15T2